UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Juan S Covelli-Chaparro,<br><br>           Petitioner,<br><br>          -v-<br><br>Pam Bondi, *in her official capacity as Attorney General of the United States*; Kristi Noem, *in her official capacity as Secretary of the Department of Homeland Security*; Todd M. Lyons, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; Brian Flanagan, *in his official capacity as Acting Deputy Field Officer for Immigration and Customs Enforcement in the New York City Area*,<br><br>           Respondents. | 2:26-cv-118<br>(NJC) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

   This action concerns a petition for a writ of habeas corpus (the "Petition") filed by Juan S. Covelli-Chaparro pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Pet., ECF No. 1.) The Petition argues that ICE's detention of Mr. Covelli-Chaparro violates Section 236(a) of the Immigration and National Act ("INA"), 8 U.S.C. § 1226(a) ("Section 1226"), the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq. It seeks a writ of habeas corpus immediately releasing Mr. Covelli-Chaparro and a declaration that his detention violates the Due Process Clause of the Fifth Amendment, among other relief.

   Respondents are government officials named in their official capacities: Pam Bondi, the United States Attorney General; Kristi Noem, the Secretary of the U.S. Department of Homeland

Security ("DHS"); Todd M. Lyons, the Acting Director of ICE; and Brian Flanagan, the Acting Deputy Field Office Director for ICE in the New York City area. In response to the Petition, Respondents make no arguments specific to Mr. Covelli-Chaparro and instead rely entirely on the arguments they made in response to a habeas petition filed in a different case: *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). Respondents contend that ICE's detention of Mr. Covelli-Chaparro is required under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States, and that he has no right to additional process under the Due Process Clause.

In 2022, United States Border Patrol, a division of DHS, paroled Mr. Covelli-Chaparro into the United States. That same year, during an ICE check in, a DHS officer released him on his own recognizance, thereby indicating that Mr. Covelli-Chaparro did not pose any danger to the community or flight risk. Since then, Mr. Covelli-Chaparro has resided continuously in the United States. He has no criminal history whatsoever. Nothing in the record suggests that he poses a flight risk or danger to the public. Rather, Respondents' position is that Mr. Covelli-Chaparro is subject to mandatory detention as someone who is "seeking admission" to the United States, notwithstanding that the fact that he has been living here for years. Court after court, judge after judge, in district after district has rejected this argument.

For the reasons explained below and in *Rodriguez-Acurio*, which is entirely incorporated by reference in this Opinion and Order, Respondents' detention of Mr. Covelli-Chaparro since January 8, 2026 is governed by Section 1226(a) and violates his Fifth Amendment rights to procedural due process. The Petition is therefore granted. Respondents must release Mr. Covelli-Chaparro from detention immediately. Furthermore, Respondents are enjoined from denying Mr.

Covelli-Chaparro bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Opinion and Order.

## FACTUAL FINDINGS

### I. Entry into the United States, Release on Parole, and Dismissal of Removal Proceedings

Mr. Covelli-Chaparro, a Colombian national, has been in the United States since April 30, 2022. (Pet. ¶ 1; Notice to Appear, Dec. 12, 2022 ("2022 NTA"), ECF No. 12-2.) He entered the United States on April 30, 2022, at or near San Luis, Arizona with his partner and two young children. (Pet. ¶ 2; Decl. of Tony Petito ("Petito Decl."), ECF No. 10-1 ¶ 4; Record of Deportable/Inadmissible Alien Form I-213 ("Form I-213"), ECF No. 10-2 at 7.) On April 30, 2022, United States Border Patrol ("USBP") encountered Mr. Covelli-Chaparro and his family. (Petito Decl. ¶ 4.). On or around May 1, 2022, USBP paroled Mr. Covelli-Chaparro and his family into the United States "as an alternative to detention," with instructions to report to the nearest ICE Enforcement and Removal Operations ("ERO") office for processing. (Petito Decl. ¶ 5; *see also* Form I-213, ECF No. 10-2 at 7.)

On December 12, 2022, Mr. Covelli-Chaparro reported to the ICE ERO located at 26 Federal Plaza, New York, New York, where he was served a Notice to Appear before an immigration judge on January 11, 2023. (Form I-213, ECF No. 10-2 at 7; Petito Decl. ¶ 6; 2022 NTA at 1.) The Notice to Appear alleges that Mr. Covelli-Chaparro is subject to removal under Section 212(a)(6)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (2022 NTA at 1;

3

Form I-213, ECF No. 10-2 at 7.) During that same ICE check-in, DHS officer Rodney Valbrun signed a Notice of Custody Determination Form I-286 ("Form I-286") dated December 12, 2022, which released Mr. Covelli-Chaparro on his own recognizance. (Form I-286, ECF No. 12-1; Form I-213, ECF No. 10-2 at 7.)

The parties dispute whether Mr. Covelli-Chaparro appeared before the immigration court as required on January 11, 2023. (Petito Decl. ¶ 7; Pet. ¶ 4; Reply at 11.) Regardless, the proceeding was rescheduled to March 23, 2023. (Petito Decl. ¶ 7.) On that date, Mr. Covelli-Chaparro appeared pro se before an immigration judge, who rescheduled the hearing for May 11, 2023, in order to give Mr. Covelli-Chaparro time to find counsel. (*Id*. ¶ 8.) On May 11, 2023, Mr. Covelli-Chaparro "appeared with counsel where pleadings were taken; [Mr. Covelli-Chaparro] admitted to the allegations contained in the NTA and conceded removability." (*Id*. ¶ 9.) A hearing on the merits of Mr. Covelli-Chaparro's immigration status was then scheduled for November 17, 2023. (*Id*.) The merits hearing was subsequently rescheduled numerous times and was eventually set for April 12, 2024. (*Id*. ¶¶ 10–13.) Neither party's submissions provide details on the hearing, but the record shows that on April 22, 2024, Immigration Judge Dara Reid granted a jointly-filed motion to dismiss Mr. Covelli-Chaparro's removal proceedings without prejudice on the basis of "Prosecutorial Discretion." (Order on Motion to Dismiss ("MTD") at 1, ECF No. 12-3; Petito Decl. ¶ 14.)

Mr. Covelli-Chaparro represents that after being released on his own recognizance by a DHS officer, he filed an application for asylum. (Pet. ¶ 4; Petitioner's Reply to Respondent's Response to the Court's Order to Show Cause ("Reply"), ECF No. 12 at 1.) Respondents dispute this fact and take the position that Mr. Covelli-Chaparro did not petition for asylum and does not have any pending applications for immigration relief on file. (Petito Decl. ¶ 16; Form I-213, ECF

4

No. 10-2 at 7.) Nonetheless, the parties do not dispute these essential facts: (1) USBP, a division of DHS, paroled Mr. Covelli-Chaparro into the United States on or around May 1, 2022; (2) Mr. Covelli-Chaparro has resided continuously in this country since that date; (3) a DHS officer released Mr. Covelli-Chaparro on his own recognizance on December 12, 2022; and (4) a first round of removal proceedings against him was dismissed on April 22, 2024.

## II. ICE Arrest and Detention

On the morning of January 8, 2026, Mr. Covelli-Chaparro's vehicle was rear-ended on or near the Long Island Expressway, near exit 38, in Roslyn Heights, New York, while he was driving to work. (Pet. ¶ 32; Reply at 2; Petito Decl. ¶ 15; Form I-213, ECF No. 10-2 at 7.) Nassau County Police Department's Highway Patrol responded to the accident and subsequently contacted ICE's Long Island Fugitive Operations after checking Mr. Covelli-Chaparro's driver's license and New York State Identification Card. (Petito Decl. ¶ 15; Form I-213, ECF No. 10-2 at 7.) ICE officers conducted a record check, concluded that Mr. Covelli-Chaparro was unlawfully present in the United States, and obtained a Form I-200 Warrant of Arrest for Mr. Covelli-Chaparro. (Form I-213, ECF No. 10-2 at 7; Petito Decl. ¶ 16.) ICE officers went to the scene of the accident and arrested Mr. Covelli-Chaparro on the warrant, and ICE has detained him ever since. (Form I-213, ECF No. 10-2 at 7; Petito Decl. ¶ 16; Form I-200 Warrant for Arrest ("Warrant"), ECF No. 12-6.)

According to Petito, ICE's detention of Mr. Covelli-Chaparro is pursuant to 8 U.S.C. § 1225(b)(2)(A). (Petito Decl. ¶ 17.) After arresting him, ICE transported Mr. Covelli-Chaparro to the Nassau County Correctional Center in East Meadow, New York. (*Id*.) Mr. Covelli-Chaparro was subsequently served a Form I-862 Notice to Appear, which charges him with removal as "an alien present in the United States without being admitted or paroled, or who

arrived in the United States at any time or place other than as designated by the Attorney General" under 8 U.S.C. § 1182(a)(6)(A)(i). (Petito Decl. ¶ 18; Form I-862 ("2026 NTA"), ECF No. 12-5 at 2.) On January 10, 2026, Mr. Covelli-Chaparro was transferred to the Delaney Hall Detention Facility in Newark, New Jersey. (Petito Decl. ¶ 18(a).)

## LEGAL STANDARD

The Petition for a writ of habeas corpus is filed under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018).[1] Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *see also Hechavarria*, 891 F.3d at 53 ("[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). Additionally, "[c]laims that the discretionary process [used to detain someone] . . . was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Velasco Lopez*, 978 F.3d at 850.

## PROCEDURAL HISTORY

On January 9, 2026, Mr. Covelli-Chaparro filed this Petition seeking a writ of habeas corpus directing Respondents to release him from detention, among other relief. (ECF No. 1.) Shortly thereafter, the Court ordered Respondents to show cause as to why the Petition should

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets, alterations, and citations.

not be granted and ordered that Mr. Covelli-Chaparro not be removed from the United States or from the Eastern District of New York, the Southern District of New York, or the District of New Jersey, absent further order of this Court. (ECF No. 3.) The Court also ordered Respondents to inform the Court where Mr. Covelli-Chaparro was detained by January 10, 2026. (Elec. Order, Jan. 9, 2026.) On January 10, 2026, Respondents filed a letter informing the Court that Mr. Covelli-Chaparro was detained at that time at the Nassau County Correctional Center and that Respondents were planning to transfer him to Delaney Detention Hall in Newark, New Jersey. (ECF No. 7.) On January 12, 2026, the Court issued an Order to Produce Mr. Covelli-Chaparro at the hearing on his Petition scheduled for January 15, 2026. (ECF No. 8.)[2]

Later on January 12, 2026, Respondents filed a letter response to the Petition, in which they explained that the letter was filed "in lieu of a formal responsive memorandum to conserve judicial and party resources, and to expedite the Court's consideration of this case, in light of the Court's decision on the principal legal issues in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, 2025 WL 3314430 (E.D.N.Y., Nov. 28, 2025)." (("Jan. 12 Letter"), ECF No. 10 at 1.) Respondents framed the facts concerning the detention of Ms. Rodriguez-Acurio and Mr. Covelli-Chaparro as "materially indistinguishable" and "acknowledge[d] that the Court's decision [in *Rodriguez-Acurio*] would control the results in this case . . . ." (*Id*. at 2.) Respondents "incorporate[d] by reference the legal arguments [they] presented in *Rodriguez-Acurio* and respectfully submit[ted] that the Court can decide this matter without further briefing." (*Id*.) Along with the letter, Respondents attached a Declaration from Tony Petito (ECF

---

[2] The Court later issued an Amended Order to Produce on January 13, 2026 (ECF No. 11), which superseded the January 12, 2026 Order to Produce (ECF No. 8). The Amended Order to Produce still required ICE to bring Mr. Covelli-Chaparro before the Court on January 15, 2026, for the hearing on his Petition. (*Id*.)

7

No. 10-1) and the following attachments: (1) a Form I-200 Warrant for Arrest (ECF No. 10-2); (2) a DHS Form I-862, dated December 12, 2022 (*id.*); and (3) a Form I-213, Record of Deportable/Inadmissible Alien (*id.*).

On January 13, 2026, the Court issued an Order noting that Respondents' letter-response to the Order to Show Cause failed to identify the specific statutory basis for Mr. Covelli-Chaparro's detention, whether Section 1225(b)(1), Section 1225(b)(2), 8 U.S.C. § 1226(c), and/or some other INA provision, and whether all documents material to Respondents' asserted statutory basis for detaining Mr. Covelli-Chaparro were included in their January 12, 2026 letter. (Elec. Order, Jan. 13, 2026.) The Court ordered Respondents to "file a supplemental submission addressing the deficiencies identified" and "confirming that Respondents have provided all documents demonstrating why Petitioner's detention in ICE custody is lawful." (*Id.*) The Court also noted that Respondents failed to provide the January 8, 2026 Form I-862 referenced in paragraph 18 of their letter. Respondents failed to respond to the Court's January 13, 2026 Order.

On January 15, 2026, the Court held a show cause hearing on the Petition. (Min. Entry, Jan. 15, 2026.) During the hearing, Respondents confirmed their position that Mr. Covelli-Chaparro's detention is governed by Section 1225(b)(2), and not Section 1225(b)(1) or any other INA provision. (*Id.*) After hearing argument from the parties, the Court granted Mr. Covelli-Chaparro's habeas relief for the reasons set forth on the record and noted that this written opinion would follow.

At the end of the hearing, the Court noticed that Mr. Covelli-Chaparro was in handcuffs. Neither Respondents' counsel nor the ICE officer accompanying Mr. Covelli-Chaparro sought the Court's permission before handcuffing Mr. Covelli-Chaparro in the courtroom. Respondents' counsel was unable to answer the Court's questions about why Mr. Covelli-Chaparro, a person in

civil administrative detention—not a defendant in a criminal case—was handcuffed in the courtroom without notice to the Court when such restraints are not used in the vast majority of criminal cases handled each day in the Eastern District of New York. Indeed, the Supreme Court has recognized in the criminal context that "[v]isible shackling" may "undermine[] the . . . fairness of the factfinding process," interfere with an individual's "ability to communicate with his lawyer," and compromise the "courtroom's formal dignity, which includes the respectful treatment of" all litigants. *Deck v. Missouri*, 544 U.S. 622, 630–32 (2005).

Although there may be cases "where these perils of shackling are unavoidable," *id*. at 32, Respondents made no showing that handcuffs were required to restrain Mr. Covelli-Chaparro during the hearing on the Petition due to any risk of flight or dangerousness. Nor did they notify the Court, much less seek permission, before using these restraints on a petitioner in this civil action. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (characterizing the proceedings in a case concerning a habeas petition challenging immigration detention as "civil, not criminal"); *Vacchio v. Ashcroft*, 404 F.3d 663, 667–68 (2d Cir. 2005) (same). Accordingly, the Court ordered Respondents to provide, by January 21, 2026, a separate letter addressing ICE's authority to require a habeas petitioner to be handcuffed in a courthouse of the Eastern District of New York in the facts at issue here.

This Opinion and Order sets forth in more detail the reasons for the Court's oral order granting Mr. Covelli-Chaparro's habeas petition.

## DISCUSSION

As noted, the Court incorporates by reference the entirety of its Opinion and Order in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) and provides this additional analysis to explain the relevance of

9

specific facts in the record relating to Mr. Covelli-Chaparro. The Court also notes that since its decision in *Rodriguez-Acurio*, the first Court of Appeals decision to weigh in preliminarily on these issues has tentatively rejected Respondents' argument with respect to Section 1225(b)(2):

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

*Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

## I. Statutory Framework

As noted, the Court's detailed opinion in *Rodriguez-Acurio v. Almodovar* is entirely incorporated by reference, including the Court's explanation of the statutory framework for removing noncitizens from the United States through removal and expedited removal proceedings, ICE's mandatory and discretionary detention of noncitizens under the INA, and the release of applicants for admission detained under 8 U.S.C. § 1225(b)(1) or (b)(2) "temporarily . . . [on parole] for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A), which is known as the humanitarian parole statute ("Section 1182(d)(5)(A)"). *See Rodriguez-Acurio*, 2025 WL 3314420, at *8–11.

## II. Analysis

Respondents take the position that "the Court's decision [in *Rodriguez-Acurio*] would control the result in this case" because the facts concerning the detention of Ms. Rodriguez-Acurio and Mr. Covelli-Chaparro are "materially indistinguishable." (Jan. 12 Letter at 1.) Respondents do not make *any* arguments or address any facts particular to Mr. Covelli-Chaparro. Instead, Respondents "incorporate[] by reference the legal arguments [they] presented in

10

*Rodriguez-Acurio* and respectfully submit[] that the Court can decide this matter without further briefing." (*Id.*)

Respondents failed to submit any filings in response to this Court's January 13, 2026 Order directing Respondents to specify the statutory basis for Mr. Covelli-Chaparro's detention and to confirm that they have provided all documents material to their arguments that Mr. Covelli-Chaparro's detention is lawful. The sole response from Respondents in the record is the three-page January 12, 2026 letter in which they do not directly invoke any specific provision of Section 1225(b), but instead express disagreement with the Court's decision in *Rodriguez-Acurio* and attach the declaration in which Petito asserts that Mr. Covelli-Chaparro is detained under Section 1225(b)(2)(A). (*See* Jan. 12 Letter.)

Here, USBP paroled Mr. Covelli-Chaparro into the interior of the United States on or around May 1, 2022, and he has continuously resided in this country since then. Like Ms. Rodriguez-Acurio, Mr. Covelli-Chaparro is an applicant for admission to the United States. But, clearly, at the time of his arrest, he was not presenting himself at the border nor was he recently apprehended just after entering. Therefore, he is not "seeking admission" as required for mandatory detention under Section 1225(b)(2).

Moreover, although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) ("Section 1225(b)(1)") as the basis for ICE's detention of Mr. Covelli-Chaparro, even were they to do so, that statute is entirely inapplicable. Mr. Covelli-Chaparro is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor does the statute's Designation Provision apply to him as an individual who was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). *See id.* at *15 (finding that "the statutory text of the Designation Provision

11

prohibits the expedited removal of noncitizens who have been, at any point in time, paroled into the United States"). Accordingly, ICE's detention of Mr. Covelli-Chaparro since January 8, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

Further supporting this conclusion is the fact that Mr. Covelli-Chaparro was arrested on a DHS Warrant for Arrest that was issued pursuant to Section 1226(a). (*See* Warrant.) The face of the Warrant authorizes an immigration officer to serve the Warrant "pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of the title 8, Code of Federal Regulations . . . ." *Id*.; *see Rodriguez-Acurio*, 2025 WL 3314420, at *24 (finding that Sections 236 and 287 of the Immigration and National Act and part 287 of title 8 of the Code of Federal Regulations correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1–287.12.); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (finding that Petitioner's Notice of Custody Determination and warrants for arrest, all pursuant to 1226, "unequivocally establish[ed]" that he was detained pursuant to Section 1226(a)). Although not dispositive standing alone, Mr. Covelli-Chaparro's arrest on a warrant invoking Section 1226 supports the conclusion that his detention is governed by Section 1226(a)'s discretionary detention framework. *See Sampiao v. Hyde*, No. 25-cv-11981, 2025 WL 2607924, at *1 (D. Mass. Sept. 9, 2025) (holding that to mandate the petitioner's detention "in these circumstances would contravene Congress's intent that Section 1226(a)'s discretionary detention framework apply to all noncitizens arrested on a warrant except those subject to Section 1226(c)'s carve out"); *dos Santos v. Noem*, No. 25-cv-12052, 2025 WL 2370988, at *7 (D. Mass. Aug. 14, 2025) ("Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States."); *cf. Jennings v. Rodriguez*, 583 U.S. 281, 289

(2018) (holding that Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings"). Thus, based on the current record, Mr. Covelli-Chaparro's detention was governed by Section 1226(a).

Respondents note that they "respectfully disagree[] with the Court's decision in *Rodriguez-Acurio*" but do not advance any arguments other than generally incorporating by reference the arguments they made in *Rodriguez-Acurio*. (Jan. 12 Letter at 1.) Respondents' arguments are unpersuasive for the reasons already set forth in *Rodriguez-Acurio*. Accordingly, Mr. Covelli-Chaparro was detained by ICE while present in the United States but not while actively seeking admission into the country. Therefore, Respondents' detention of him since January 8, 2026 was not carried out pursuant to Section 1225(b)(2) or, as explained above, pursuant to Section 1225(b)(1).

### A. Procedural Due Process

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. When evaluating a procedural due process claim, there are "two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022); *see also Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019).

The Petition argues that ICE's detention of Mr. Covelli-Chaparro infringes on his liberty interest in being free from detention, thereby triggering his right to procedural due process. In *Rodriguez-Acurio*, Respondents cited several cases, including *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020), to argue that Ms. Rodriguez-Acurio did not have a right to any additional process than what the Section 1225 mandatory detention scheme affords.

*Rodriguez-Acurio*, 2025 WL 3314420, at *25. Respondents' January 12, 2026 letter incorporates by reference such arguments made by the respondents in *Rodriguez-Acurio*. (Jan. 12 Letter at 1.)

As a preliminary matter, as established above, Mr. Covelli-Chaparro is not detained pursuant to Section 1225(b)(2); accordingly, his detention is governed by Section 1226(a), and he is entitled to the protections afforded by that statute. Section 1226(a) vests DHS with "broad authority to arrest and detain noncitizens, but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." 2025 WL 3314420, at *29 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 492) (emphasis in original).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850; *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (noncitizen who entered the country in violation of the law cannot be "deprived of [her] liberty" without receiving "due process of law"). In habeas proceedings concerning executive detention, courts must conduct "the most searching review" to ensure the legality of detention that "occur[s] without the procedural protections required in courts of law." *Velasco Lopez*, 978 F.3d at 850–51. *Thuraissigiam* does not support Respondents' position because it "stands for the limited principle that those 'at the threshold of entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country.'" *Rodriguez-Acurio*, 2025 WL 3314420, at *26 (quoting *Thuraissigiam*, 591 U.S. at 107).

Mr. Covelli-Chaparro was paroled into the interior of the United States in 2022, has been living in New York since that time, has developed significant community ties, and his initial removal proceedings were dismissed as a matter of prosecutorial discretion. Therefore, the cases cited by Respondents in *Rodriguez-Acurio*, including *Thuraissigiam*, are distinguishable. Accordingly, Mr. Covelli-Chaparro has a liberty interest in being free from detention that is afforded procedural due process protection. *See Velasco Lopez*, 978 F.3d at 850 (confirming that the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent"). That liberty interest was necessarily infringed by ICE's detention of Mr. Covelli-Chaparro since January 8, 2026.

### B. Respondents' Detention of Mr. Covelli-Chaparro Without Any Notice or Opportunity to be Heard Violates His Rights to Procedural Due Process

Courts apply the *Mathews v. Eldridge* balancing test "when determining the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, __ F. Supp. __, No. 25-cv-6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sept. 12, 2025). Under that test, a court's determination of what procedures are required under the Fifth Amendment involves considering: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976). Applying this balancing test, Respondents' detention of Mr. Covelli-Chaparro violates his Fifth Amendment rights to procedural due process.

First, as already established, the Petition invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. ICE detained Mr. Covelli-Chaparro without any notice, explanation, or an opportunity to be heard on

15

January 8, 2026, after arresting him shortly following a car accident when he was waiting for the police to arrive to the scene. (*See* Pet. ¶¶ 7, 32; Form I-213, ECF No. 10-2 at 7; Petito Decl. ¶¶ 15–17.) As a married man and the father of two young children, each day of his detention in ICE custody separates him from his family, who are struggling emotionally and financially without his support. (Pet. ¶ 35.)

Second, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Covelli-Chaparro. Respondents did not provide Mr. Covelli-Chaparro with any notice or any opportunity to be heard before a DHS officer or immigration judge prior to detaining him on January 8, 2026. For the same reasons set forth fully in *Rodriguez-Acurio*, there is a high risk of erroneous deprivation of liberty in detaining Mr. Covelli-Chaparro without any notice or opportunity to be heard. *See* 2025 WL 3314420, at *29–30. There is little cost and significant benefit from providing the procedural safeguard of requiring that any detention be preceded by an individualized determination by a DHS officer as to whether Mr. Covelli-Chaparro poses a flight or safety risk. *See id.*; *Lopez Benitez*, 795 F. Supp. 3d at 495; *Hyppolite v. Noem*, No. 24-cv-4304, 2025 WL 2829511, at *13–14 (E.D.N.Y. Oct. 6, 2025) (finding an "extremely high" risk of erroneous deprivation where a person is detained under Section 1226(a) without any pre-deprivation notice or an opportunity to be heard).

Finally, although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record suggesting that Mr. Covelli-Chaparro poses a risk of flight or danger to the public. *See Velasco Lopez*, 978 F.3d at 854 (holding that "the Attorney General's discretion to detain individuals under [Section 1226(a)] is valid where it advances a legitimate governmental purpose," such as "ensuring that noncitizen[s] do not

abscond and . . . ensuring they do not commit crimes."); *Lopez Benitez*, 795 F. Supp. 3d at 496. In 2022, USBP permitted him to move to the interior of the United States, and a DHS officer released Mr. Covelli-Chaparro on his own recognizance, demonstrating that DHS evaluated him as posing no risk of flight or danger to the community. (*See* Notice of Custody Determination, ECF No. 12-1.) Moreover, DHS terminated removal proceedings against Mr. Covelli-Chaparro in 2024. (*See* MTD at 1.) There is absolutely nothing in the record to show that there has been any change in circumstances suggesting that Mr. Covelli-Chaparro poses a risk of flight or danger, and Respondents concede that DHS has made no such individualized determination.

\* \* \*

Weighing all of the *Mathews v. Eldrige* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that his detention was required to advance any legitimate government interest in ensuring appearance at removal proceedings or preventing danger to the community—Respondents' detention of Mr. Covelli-Chaparro with no notice or opportunity to be heard and no showing of changed circumstances following release on parole violates his procedural due process rights. *See, e.g.*, *Rodriguez-Acurio*, 20225 WL 3314420, at \*25–31; *Lopez Benitez*, 795 F. Supp. 3d at 496; *Huamani Tumba v. Francis*, No. 25-cv-6065, 2025 WL 3079014, at \*9 (E.D.N.Y. Nov. 28, 2025). Because the Court finds that Respondents' detention of Mr. Covelli-Chaparro violates his rights to procedural due process, it declines to reach his substantive due process claims and claims under the INA and APA.

### III. Remedy

As addressed at length in *Rodriguez-Acurio*, upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice

17

require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008).

Here, Mr. Covelli-Chaparro seeks a writ of habeas corpus "ordering Respondents to release" him. (Pet. at 13.) He also seeks "any further relief this Court deems just and proper." (*Id.*)

In *Rodriguez-Acurio*, this Court provides the legal basis for ordering release as well as injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting Mr. Covelli-Chaparro to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32. A bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here. Mr. Covelli-Chaparro's detention was unlawful from its inception because ICE detained him under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a). Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates relief guarding against re-detention in violation of this Court's determination that Mr. Covelli-Chaparro is not subject to mandatory detention under Section 1225(b).

For these reasons, Respondents' argument that the release of Mr. Covelli-Chaparro would moot the Petition's request for "any further relief this Court deems just and proper" is incorrect. (Jan. 12 Letter at 3.) In support, Respondents cite a case in which this Court deemed a habeas petition moot where the respondents *voluntarily released* the petitioner before the Court ruled on the petition's request for release. (*Id.* (citing Elec. Order, Dec. 3, 2025, *Cajamarca Cajamarca v. Lyons, et.al.*, No. 25-cv-6540 (E.D.N.Y.) (Choudhury, J.)).) They do not address the text of 28 U.S.C. § 2243, which authorizes the Court to "dispose of the matter as law and justice require."

Nor do they account for the Board of Immigration Appeals' ("BIA") position that immigration judges lack authority to hear bond requests or to grant bond to applicants for admission, or any of the other authority set forth in *Rodriguez-Acurio* to support this Court's grant of relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting Ms. Rodriguez-Acurio to mandatory detention absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.[3] "As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediately release him and enjoin the Government from further similar transgressions" against him. *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019).

Accordingly, pending the issuance of a final order of removal against Mr. Covelli-Chaparro, Respondents are enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Opinion and Order.

## CONCLUSION

For the reasons explained above and in *Rodriguez-Acurio*, the Petition is granted in its entirety. Pending the issuance of any final removal order against Mr. Covelli-Chaparro, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis

---

[3] Numerous courts have afforded habeas petitioners similar injunctive relief along with ordering release due to the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), where the BIA held that the INA requires that all applicants for admission—including those who have been residing in the United States for years—are subject to mandatory detention under Section 1225(b)(2), and that immigration courts cannot grant bond to such individuals. *See, e.g.*, *Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (granting similar relief); *Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025) (same); *Fangzeng Huang v. Almodovar*, No. 25-cv-9346, 2025 WL 3295912, at *4 (S.D.N.Y. Nov. 26, 2025) (same).

that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Opinion and Order.

Dated: Central Islip, New York
January 15, 2026

                                                */s/ Nusrat J. Choudhury*
                                                NUSRAT J. CHOUDHURY
                                                United States District Judge